*691 OPINION OF THE COURT
Charles Apotheker, J.
Plaintiff is suing the defendant alleging that the defendant caused him bodily injury by infecting him with Chlamydia, which is a sexually transmitted disease. He claims damages for medical treatment, mental anguish, and "loss of capacity for the enjoyment of life,” totalling $2,000, the jurisdictional limit in the Small Claims Part.
Defendant counterclaims for the same amount claiming intentional infliction of emotional distress based upon threatening and abusive phone calls the plaintiff allegedly made to the defendant in December 1991, and the alleged vandalizing of the defendant’s car that took place during the same time period.
THE FACTS
In the fall of 1988, the plaintiff and the defendant began an intimate relationship which lasted to approximately November 1991. Plaintiff testified that during this time he engaged in sexual activity only with the defendant. He did not use a condom during this relationship since the defendant utilized other forms of birth control.
Plaintiff testified that he received a call from the defendant the Sunday of the 1991 Thanksgiving weekend advising him that she had a medical problem, and that he should seek an examination. The very next day the plaintiff visited his physician and was diagnosed as having Chlamydia, a sexually transmitted disease. He was put on a 10-day regimen of antibiotics. His physician advised if plaintiff observed no other signs, he would be considered cured. He incurred a doctor bill of $52 and a prescription bill of approximately $13.
The plaintiff testified on cross-examination that while he engaged in sex before the relationship with defendant began, he always used a condom. The defendant testified that she called the plaintiff as soon as she found out about this problem, and that she never engaged in sex with anyone else during their relationship. The defendant further testified regarding her counterclaim about harassing and abusive phone calls and letters which began after the plaintiff was diagnosed. Defendant submitted photographic evidence of obscenities painted on her car. A number of defendant’s friends testified in support stating that the plaintiff repeatedly called and harassed them about the defendant. Although none of them saw the plaintiff deface the defendant’s vehicle, one witness *692 did observe the plaintiff near the location of defendant’s car in the middle of the night that the defacement occurred.[1]
DISCUSSION
New York permits a cause of action for what is commonly called a prima facie tort (Annotation, 16 ALR3d 1191). Restatement (Second) of Torts § 870 provides in part that this liability may be imposed although the actor’s conduct does not come within the traditional category of tort liability. The elements of recovery under prima facie tort are: (1) the infliction of intentional harm; (2) solely to injure plaintiff without any excuse or justification; (3) resulting in special economic damage which must be specifically pleaded; and (4) by an act or series of acts that would otherwise be unlawful (7A Warren’s New York Negligence, Mental Suffering, § 3.03, at 457).
The only New York case reported on the issue of transmission of a venereal disease is an 1865 case in which an appellate court upheld a judgment for a father based upon the transmission of a venereal disease to his daughter (White v Nellis, 31 NY 405). Many jurisdictions used to reject these types of cases based upon a number of reasons, such as the right to privacy and anti-heart balm statutes. However, recently a number of jurisdictions have recognized a cause of action for the tortious communication of a venereal disease on the grounds of intentional infliction of emotional distress, fraud and deceit, misrepresentation and negligence (see, Annotation, 40 ALR4th 1089). A Minnesota appellate court, in a 1988 case (R.A.P. v B.J.P., 428 NW2d 103 [Minn]), found that people who know they have genital herpes have a legal duty to prevent its spread, and that includes, at a minimum, the duty to inform potential sex partners. The court affirmed a prima facie case for negligence and for fraud.
Based upon the foregoing authorities, this court holds that New York recognizes a cause of action for intentional or negligent communication of a venereal disease under either (1) the general prima facie tort theory; or (2) an action for intentional or negligent infliction of emotional distress; or (3) fraud, deceit and misrepresentation.
That being said, this court, after examining the testimony and the proof submitted, dismisses plaintiff’s cause of *693 action for intentional infliction of emotional harm, finding that there is insufficient proof that the defendant knew of her condition and intentionally transmitted same to the plaintiff. There is no proof by a preponderance of the evidence that the defendant transmitted this disease to the plaintiff. In fact, there is no more proof that the defendant transmitted this disease to the plaintiff than there is proof that the plaintiff transmitted it to the defendant.
Regarding the issue of negligence, the cases have also held that when a special relationship exists between the parties, one of the parties can be held negligent by not disclosing to the other party that one was infected with a sexually transmitted disease or by failing to take precautions, such as the use of a condom, to prevent transmission of the disease. A California court recently held an individual negligent where the evidence showed that the defendant knew he had herpes, that it could be transmitted by sexual conduct, and did not take the appropriate actions to prevent its transmission. The court also held that the right of privacy is outweighed by the State’s strong interest in preventing spread of serious illnesses. The right of privacy should not insulate a defendant who has negligently or deliberately infected someone with a venereal disease. (See, Doe v Roe, 218 Cal App 3d 1538, 267 Cal Rptr 564.)
In the case at bar, if there were proof by a preponderance of the evidence that the defendant knew she had Chlamydia when she engaged in sexual relations with the plaintiff, the court might be persuaded to uphold plaintiff’s cause of action in negligence.[2]
Credible testimony indicates that the defendant notified the plaintiff as soon as she knew she had a problem, following a physical examination, which was after the last time they had sexual relations. It is the court’s view that the defendant acted properly when she discovered her problem by letting the plaintiff know within a reasonable time. The court again is prevented from making a clear finding of negligence since the testimony reveals that it is just as likely that plaintiff could *694 have been carrying this disease and transmitted it to the defendant.
Although the doctrine of "assumption of risk”[3] was abolished in New York as an absolute bar to recovery (CPLR 1411), it does bear upon defendant’s duty and its alleged breach. A person assumes the risk where he voluntarily subjects himself to a peril known to him or generally observable by a person of ordinary prudence in his situation (Arbegast v Board of Educ., 65 NY2d 161 [1985]). In the same vein, persons who engage in unprotected sex, at a time of the prevalence of sexually transmitted diseases, including some that are fatal, assumes the risk of contracting such diseases. Both parties in an intimate relationship have a duty to adequately protect themselves. When one ventures out in the rain without an umbrella, should they complain when they get wet?
Defendant’s counterclaim deals, however, with plaintiffs intentional actions after treatment and after he found out about this disease. There is no question that the defendant has proved her case by a preponderance of the evidence that the plaintiff overreacted, acted out of spite and out of retribution for what he perceived to be defendant’s unfaithfulness in the transmission of the disease. Plaintiffs reaction to this disease far exceeded the alleged wrong perpetrated by the defendant.
Plaintiffs making of abusive telephone calls and actions to both the defendant and her friends, and most of all, the defacement of the defendant’s car with obnoxious and vile language, is indefensible conduct which amounted to a cause of action for the intentional infliction of emotional distress.
DAMAGES
Since I have dismissed plaintiffs causes of action, there is no need to discuss the issue of his alleged damages. However, the plaintiff sued for $2,000 when his expenses amounted to no more than $65, consisting of his medical and prescription bills. He testified that he was upset and concerned, and that caused him great emotional pain. However, the testimony reveals that he was told about this condition on Sunday *695 evening, and within the next 24 hours, was assured that his condition was relatively harmless, and that the treatment would result in a complete cure. The motivation of the plaintiff in bringing this suit is therefore called into question.
It seems clear to this court that the plaintiff’s motivation evidenced by his actions towards the defendant in December of 1991 is consistent with the plaintiff instituting this action. It was brought to embarrass the defendant and as retribution for the defendant’s alleged unfaithfulness and for defendant bringing criminal charges against him. Although the Rules of the Chief Judge (22 NYCRR part 130) specifically preclude Town and Village Courts from awarding sanctions for frivolous conduct, let it clearly be stated that if this court had the power to punish the plaintiff for bringing this action, it would clearly do so.
With regard to defendant’s damages, the defendant submitted photographs of the car in question, indicating the damage that was done to it. There is no indication, however, whether the material that was used to deface the car was washed off, still remains, or the cost of removing same. Therefore, the court is without proper evidence to award damages for the property damage allegedly done to defendant’s car. In addition, proof of damages is lacking for the mental suffering arising from the plaintiff’s outrageous conduct. New York, however, recognizes that nominal damages can be awarded merely in recognition of the plaintiff’s right, and of the technical infraction thereof, by the defendant (see, 36 NY Jur 2d, Damages, § 5). Such damages may be awarded when it is necessary to preserve rights and to prevent subsequent possible breaches in the future. The court, therefore, awards the defendant nominal damages of $1.
Judgment dismissing plaintiff’s cause of action granting judgment for defendant on her counterclaim in the sum of $1, plus statutory costs and disbursements.

. Said alleged conduct resulting in criminal charges being brought against plaintiff.

. Plaintiff’s exhibit 1, a booklet describing sexually transmitted diseases, states that "Sometimes Chlamydia does not cause any signs that you can see, but other times it does. If there are visible signs, you will notice them within one to three weeks after having sex with someone who is infected.” (Emphasis supplied.) It seems clear that this disease may be difficult to detect unless you have a physical examination since its symptoms may be confused with other urinary or stomach pain.

. Not pleaded in defendant’s answer as would be required by CPLR 3018 (b) if this was not in the Small Claims Part of this court. However, UJCA 1804 requires the court to do substantial justice between the parties. Consideration of this defense is thus warranted.