OPINION OF THE COURT
Anthony J. Falanga, J.
This is an action for divorce. The parties were married on May 22, 1983. There are two children of the marriage: Rachel, born July 18, 1984, and Liza, born May 27, 1987. The wife’s complaint served in June 2000 seeks a divorce on the grounds of adultery and cruel and inhuman treatment. The complaint also asserts third, fourth and fifth causes of action sounding in negligence, fraud, battery and misrepresentation, seeking compensatory damages of $1 million. The gravamen of these causes of action is that prior to July 1987 the husband contracted Human Papilloma Virus (HPV); that he knew or should have known that he contracted HPV; that he failed to advise the wife that he contracted HPV; that he engaged in unprotected sex with the wife and that he transmitted HPV to the wife. The complaint alleges that in July 1987, the wife was advised by her physician that she had HPV; that her physician informed her that the virus can be dormant for years and that she could have contracted it as the result of her own or the husband’s premarital sexual relations with others. The complaint further alleges that in August 1999 the husband admitted to the wife that he had contracted HPV from a woman named “Carol” sometime between the birth of the parties’ two children.
The husband now moves for an order pursuant to CPLR 3025 (b) granting him leave to amend his answer to interpose the affirmative defense of the Statute of Limitations, and upon such amendment, dismissing the wife’s third, fourth and fifth causes of action as time barred. He contends that whether said causes of action sound in negligence, fraud, battery or misrepresentation, said causes of action were not timely commenced. In support of his motion, the husband has submitted an affidavit, *129 sworn to on April 23, 2001, in which the husband states that he has never been treated for HPV and that he never told the wife that she had contracted the disease from him.
The wife opposes the motion on the ground that the third, fourth and fifth causes of action were tolled by the parties’ status as husband and wife. She contends that absent such a “marriage toll,” she would be compelled by law to seek redress for her injuries at the cost of the destruction of the marital relationship. In support of her contention, the wife quotes from recent case law from the First Department, Appellate Division, dealing with the Statute of Limitations applicable to a cause of action to set aside a prenuptial agreement, Bloomfield v Bloomfield (281 AD2d 301, 304) where the court set forth that: “in view of the public policy of this State with respect to the marital relationship, the [S]tatute [of Limitations] must be tolled until the parties physically separate, until an action for divorce or separation is commenced, or until the death of one of the parties. The result otherwise is the ‘anomalous’ requirement that, irrespective of the viability of the marriage relationship, the husband and wife must assume adversarial positions as to their prenuptial agreement within the first six years of their marriage or forever lose their right to challenge the agreement.” Using the Appellate Division’s reasoning in Bloomfield (supra), the wife’s counsel analogizes that, despite the fact that she knew she had contracted HPV prior to July 1987, the wife’s obligation to commence an action for monetary damages within the appropriate statutory period was tolled for as long as the marriage remained viable.
The portion of the husband’s motion which seeks leave to serve the proposed amended answer is granted pursuant to the liberal policy regarding amendments to pleadings in matrimonial actions and the absence of any allegations of prejudice to the wife. The portion of his motion to dismiss the wife’s third, fourth and fifth causes of action is decided as follows:
The wife’s obligation to prosecute the claims at issue herein was not tolled during the marriage. Her counsel’s reliance on the decision in Bloomfield (supra) is misplaced.
First, while this Court notes its agreement with the reasoning of the Appellate Division, First Department, in Bloomfield (supra) it is constrained to follow the well-established law in the Appellate Division, Second Department, which unequivocally holds that the existence of a viable marriage does not toll the Statute of Limitations with regard to challenges to prenup *130 tial agreements (see, Rubin v Rubin, 275 AD2d 404; Rosenbaum v Rosenbaum, 271 AD2d 427; Anonymous v Anonymous, 233 AD2d 350; Pacchiana v Pacchiana, 94 AD2d 721).
Further, the wife’s causes of action at issue herein sounding in tort are not properly compared to a cause of action to set aside a prenuptial agreement. A spouse who has been physically injured by the negligent or intentional conduct of the other spouse, whether by virtue of an automobile accident, an assault or by contracting a sexually transmitted disease, is obligated by the laws of this State to seek redress within the applicable time period established by statute. While there is convincing logic set forth by the Appellate Division, First Department, with regard to a “marriage toll” with respect to actions to set aside premarital agreements, the wife’s contention herein would require the application of a “marriage toll” to all claims which arise between spouses during the course of the marriage. There is no support in the law for such a contention and, in fact, the law clearly requires spouses to choose to either timely litigate claims against their spouses or forfeit their claims.
A clear indication that the Legislature has not promulgated a “marriage toll” can be found in the Statute of Limitations provisions set forth in Domestic Relations Law § 140 (e); § 171 (3) and § 210. Domestic Relations Law § 210 prohibits the prosecution of matrimonial actions on certain grounds based on acts which occurred more than five years prior to the commencement of the action. Domestic Relations Law § 171 (3) bars an action sounding in adultery which was discovered more than five years prior to the commencement of the action. Domestic Relations Law § 140 (e) sets forth various time limitations relating to an action seeking an annulment on grounds of fraud and duress. These Statutes of Limitations do not express a public policy determination that a spouse’s claim against his or her spouse is tolled to protect a marriage until such time as the marriage is no longer viable. Rather, the clear legislative intent underlying the enactment of the Statutes of Limitations in the Domestic Relations Law was to implement the longstanding public policy which disfavors the granting of matrimonial relief on grounds which have been acquiesced in by the parties for years relating to “oifenses” which are presumed by law to have been pardoned (see, Ackerman v Ackerman, 200 NY 72; Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Domestic Relations Law C210:l, at 577-578). For example, in I. S. v R. S. (117 AD2d 780), the Appellate Divi *131 sion, Second Department, held that where a wife had discovered that her husband had contracted a venereal disease more than five years prior to the commencement of the wife’s divorce action, the action sounding in cruel and inhuman treatment, based upon the allegation that the husband had contracted such disease, was time barred.
Accordingly, the Court holds that neither public policy nor any relevant statute or precedent tolled the Statutes of Limitations applicable to the third, fourth or fifth causes of action in the complaint.
The wife herein contends that, even without the toll, her claim sounding in fraud remains viable in that although she discovered she had contracted HPV prior to July 1987, she did not discover she had contracted it from her husband until his August 1999 admission. She relies on the Statute of Limitations, CPLR 213 (8), which permits an action sounding in fraud to be commenced within two years after the fraud was discovered or could have been discovered through the exercise of reasonable diligence.
The law is well settled that pursuant to CPLR 213 (8) and 203 (g) an action sounding in actual fraud must be commenced within six years of the commission of the fraud, or within two years after the fraud was or should have been discovered through the exercise of reasonable diligence. An action sounding in constructive fraud, governed by the six-year Statute of Limitations set forth in CPLR 213 (1), does not get the benefit of the two years from discovery exception (see, Liberty Co. v Boyle, 272 AD2d 380; Wall St. Assocs. v Brodsky, 257 AD2d 526; Rattner v York, 174 AD2d 718). As the wife’s injury in issue herein occurred prior to July 1987, which is when she was diagnosed with HPV, the alleged actionable fraud necessarily occurred prior thereto. If the alleged fraud constitutes only constructive fraud, the applicable Statute of Limitations, CPLR 213 (1), expired in July 1993. Accordingly, the wife herein can state a viable claim in this action only if the fraud at issue constitutes actual fraud subject to the two years from discovery exception of CPLR 213 (8).
The wife relies on the First Department, Appellate Division’s 1986 decision in Maharam v Maharam (123 AD2d 165), but that case is not dispositive of the issues in the instant action as the issues in Maharam (supra) did not involve the applicability of CPLR 213 (8). In Maharam (supra), the wife’s action was commenced in 1983, and it was undisputed that the husband knew in 1975 that he had genital herpes. The com *132 plaint alleged that the husband’s continuing failure to disclose that he had contracted herpes resulted in injury to the wife who was treated for certain symptoms in 1975, but claimed that her physician did not diagnose her as having herpes until December 1980. While the court held that the wife’s complaint stated a cause of action, sounding in “constructive, if not actual, fraud,” it also held that the husband’s Statute of Limitations defense was viable in that there was an issue of fact, to be determined at trial, as to whether or not the wife had learned that she had genital herpes some time between 1975 and December 1980 (id., at 170). The court reasoned that the husband’s fraudulent conduct, of failing to disclose his illness, continued only until such time as the wife knew that she had contracted genital herpes. Once the fraudulent conduct ceased, the wife in Maharam (supra) had six years within which to commence an action for damages. If the wife in Maharam (supra) first learned that she had herpes in 1975, the Statute of Limitations of six years set forth in both CPLR 213 (1) and 213 (8) would have expired in 1981, making the action commenced in 1983 untimely. If the husband’s fraudulent failure to disclose continued until December 1980, the Statute of Limitations would not expire until six years later in 1986. However, as the wife admittedly discovered she had herpes in December 1980, and did not commence an action until almost three years later in 1983, the two years from discovery exception of CPLR 213 (8) was never applicable or relevant in Maharam (supra), and that court never had to reach the issue of whether or not the husband’s alleged conduct constituted actual fraud.
As previously noted, since the claim asserted by the wife herein is viable only if the conduct in issue constitutes actual fraud, this Court must address such issue.
This Court holds that the failure of a spouse to disclose to the other spouse that he or she has contracted a sexually transmitted disease does constitute actual fraud. Pursuant to Public Health Law § 2307, promulgated effective June 1, 1954, a person who knows he or she has an infectious venereal disease and has sexual relations with another is guilty of a misdemeanor. The statute makes it a criminal act for a knowingly infected person to engage in sexual relations. Further, the law is well settled that “[Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact” (Abbate v Abbate, 82 AD2d 368, 382; see also, Nasaba Corp. v Harfred Realty Corp., 287 NY 290, 294-296; *133 Emord v Emord, 193 AD2d 775). A duty to disclose is triggered when a fiduciary has reason to believe that information is material and germane and that the failure to disclose it has the same net effect as an affirmative misrepresentation (Botti v Russell, 180 AD2d 947; see, 60 NY Jur 2d, Fraud and Deceit, §§ 93-96, at 568-577). A spouse who knows that he or she has contracted an infectious sexually transmitted disease is “duty-bound in honesty’ to disclose the illness to his or her spouse, before engaging in unprotected relations with the spouse, and the failure to do so constitutes actual fraud.
Here, as the failure to disclose alleged in the complaint constitutes actual fraud, the wife can state a meritorious cause of action if, pursuant to the CPLR 203 (g) and 213 (8) two years from discovery rule, she can allege that the fraud in issue could not have been discovered, through the exercise of reasonable diligence, within the two years prior to the commencement of the action.
The time that a plaintiff could, through the exercise of reasonable diligence, have discovered an alleged fraud has been defined by the Appellate Division, Second Department, as the time from which it “conclusively appears that the plaintiff has knowledge of facts which should have caused [him or] her to inquire and discover the alleged fraud” (Baratta v ABF Real Estate Co., 215 AD2d 518, 519, quoting Rattner v York, supra, at 721). “The two-year period does not commence from the date that plaintiff has positive knowledge of the fraud, but from the date that plaintiff becomes aware of enough operative facts so that, with reasonable diligence, [he or] she could have discovered the fraud” (Stride Rite Children’s Group v Siegel, 269 AD2d 875, 876, quoting Watts v Exxon Corp., 188 AD2d 74, 76).
Once the wife herein was diagnosed with HPV in July 1987, she clearly had knowledge of “operative” facts which would have enabled her through the exercise of reasonable diligence to discover that she could have contracted the illness from her husband as a result of his engaging in extra-marital sexual relations. According to the wife’s attorney, the wife chose not to destroy the vitality of her marriage by questioning the husband, but instead chose to accept the viral dormancy explanation. The Court holds as a matter of law that the diagnosis of the wife’s illness constituted sufficient knowledge of “operative” facts which should have caused her to make inquiry in or about July 1987, and to discover facts sufficient to enable her to commence litigation against her husband for her *134 injuries at that time. Under the circumstances of this case, as the wife should have, through the exercise of reasonable diligence, discovered the fraud in issue in or about July 1987, her cause of action sounding in actual fraud expired no later than six years after July 1987, in or about July 1993, causing her claims first asserted in this action in or about June 2000 to be untimely.
Accordingly, the wife’s third, fourth and fifth causes of action are dismissed as time barred. The husband’s motion is granted and the wife’s cross motion is dismissed.